UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Rhonda Mason,
        Claimant

        v.                                    Civil No. 12-cv-017-SM
                                              Opinion No. 2013 DNH 013

Michael J. Astrue, Commissioner,
Social Security Administration,
        Defendant

**O R D E R**

        Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant,

Rhonda Mason, moves to reverse the Commissioner's decision

denying her applications for Social Security Disability Insurance

Benefits under Title II of the Social Security Act, 42 U.S.C.

§ 423 (the "Act"), and Supplemental Security Income Benefits

under Title XVI of the Act, 42 U.S.C. §§ 1381-1383c.  The

Commissioner objects and moves for an order affirming his

decision.


        For the reasons discussed below, claimant's motion is

denied, and the Commissioner's motion is granted.

**Factual Background**

I.   Procedural History.

Claimant was born in 1987.  In 2009, at the age of 22, she filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging that she had been unable to work since October 2, 2007, due to numerous ailments.  That application was denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In August of 2011, claimant and her attorney appeared before an ALJ, who considered claimant's application de novo.  Six weeks later, the ALJ issued his written decision, concluding that claimant retained the residual functional capacity to perform the physical and mental demands of light work.  Administrative Record ("Admin. Rec.") at 17-19.  In light of that finding, the ALJ determined that claimant was capable of performing her past relevant work as a cashier.  Id. at 20.  In the alternative, the ALJ determined that, given her young age, educational background, and ability to communicate in English, there are other jobs that exist in significant numbers in the national economy that claimant can perform.  Id.  Accordingly, the ALJ determined that she was not disabled, as that term is defined in the Act, at any

2

time prior to the date of his decision (September 23, 2011).  <u>Id</u>. at 20-21.

Claimant then sought review of the ALJ's decision by the Appeals Council.  That request was denied.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act.  Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8).  In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 10).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 11), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.    "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

Consequently, provided the ALJ's findings are properly supported, the court must sustain those findings even when there

4

may also be substantial evidence supporting the contrary
position.  See, e.g., Tsarelka v. Secretary of Health & Human
Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v.
Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir.
1981).

II.  The Parties' Respective Burdens.

    An individual seeking Social Security disability benefits is
disabled under the Act if he or she is unable "to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  See also 42 U.S.C. § 1382c(a)(3).  The Act
places a heavy initial burden on the claimant to establish the
existence of a disabling impairment.  See Bowen v. Yuckert, 482
U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human
Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden,
the claimant must prove, by a preponderance of the evidence, that
her impairment prevents her from performing her former type of
work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985);
Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If
the claimant demonstrates an inability to perform her previous

work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(g) and 416.912(g).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do [her]
> previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability (October 2, 2007) and that she had acquired sufficient quarters of coverage to remain insured through September 30, 2009. Admin. Rec. at 12, 14. Next, he concluded that claimant suffers from the following severe impairments: "irritable bowel syndrome and carpal tunnel syndrome." Id. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1. Admin. Rec. at 16-17.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of

7

the full range of light work.[1]  Based upon that finding, he
concluded that she could perform her prior work as a cashier or,
in the alternative, that there are other jobs in significant
numbers in the national economy that she could perform.
Consequently, the ALJ concluded that claimant was not "disabled,"
as that term is defined in the Act, through the date of his
decision.

### Discussion

Claimant challenges the ALJ's decision, asserting that he
erred in concluding that: (1) her mental impairment, dizziness,
and back pains are not severe impairments; (2) her testimony
about the severity of her impairments was not entirely credible;
(3) she retained the residual functional capacity to perform

---

[2]     "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

light work; and (4) her past relevant work included employment as
a cashier.

I.   Claimant's Severe Impairments.

     Claimant says the ALJ erred at step two of the sequential
analysis, when he determined that her alleged mental impairment,
dizziness, and back pains were not severe.  The court disagrees.
The ALJ supportably concluded that claimants back pain, "syncope
without provocation," and "anxiety disorder and affective
disorder" either fail to rise to the level of medically
determinable impairments and/or cause no more than minimal
limitations on claimant's ability to engage in substantial
gainful employment.  See Admin. Rec. at 14-15.  And, although
claimant does not raise it in her memorandum, the ALJ's
conclusion that her alleged fibromyalgia does not amount to a
"severe" impairment is also well-supported.

     Moreover, even if the ALJ did err at step two, that error
was harmless.  It is clear from the record that he thoroughly
considered claimant's non-severe impairments and discussed each
at length in reaching the conclusion that none adversely affected
her residual functional capacity.  See 20 C.F.R. §
404.1545(a)(2).  See also Montore v. Commissioner, 2012 DNH 131

at 10 (D.N.H. Aug. 20, 2012) ("A Step 2 error is harmless if the
ALJ continued through the remaining steps and considered all of
the claimant's impairments.") (citation and internal punctuation
omitted).

II.  <u>Claimant's Credibility</u>.

Next, claimant complains that the ALJ erred in concluding
that her statements about the intensity, persistence, and
limiting effects of her various ailments were not entirely
credible.  But, the record amply supports the ALJ's credibility
determination, as does his written decision.

As the ALJ observed, claimant's assertions of disabling
physical and mental impairments are inconsistent with her
activities of daily living.  <u>See, e.g.</u>, Admin. Rec. 170 (claimant
described her activities of daily living as follows: "I do
laundry, take a shower, eat, brush teeth, brush hair, etc.  Get
dinner ready, take dog for a walk, fold laundry, clean, help
friend deliver phone books, etc.  See doctors - have about 3-4
appointments a week, sometimes more - do grocery shopping, etc.")
and 176 (claimant reported that she could lift 20 pounds).  <u>See
also</u> <u>Id</u>. at 403.  Claimant's assertions are also inconsistent

10

with her ability to provide babysitting services to two children during the summer of 2011.  <u>See</u> Admin. Rec. at 483.

Additionally, there are several examples in the record of claimant having reported inconsistent (even conflicting) statements to her treating medical professionals about her symptoms, work history, personal history, and daily activities. <u>Compare</u> Admin. Rec. at 383-84, 395, 398 (in early 2010, claimant reported to several medical professionals that she was employed on a part-time basis, enjoyed her job, and was doing "really well") <u>with</u> <u>id</u>. at 386-87; 393 (approximately one month later, claimant reported that she was having several episodes of nausea and dizziness each week, she was "stressed out," and "seizures have been worse"); <u>compare</u> <u>id</u>. at 45 (at the administrative hearing, claimant implied that she was surprised to learn that she was pregnant) <u>with</u> <u>id</u>. at 403 (claimant reported that she "stopped birth control [and was] trying to have a baby; tired of caring for others' children, wants one of her own."); <u>compare</u> <u>id</u>. at 39 (claimant testified she was fired from Dunkin Donuts for having taken too many bathroom breaks as a result of her IBS) <u>with</u> <u>id</u>. at 330 (claimant reported that she left Dunkin Donuts because her manager sexually harassed her).  <u>See also</u> <u>Id</u>. at 492 (in May of 2010, claimant reported that she had episodes of

11

dizziness, lightheadedness, and "seizures" that were too numerous to count, causing her to fall on a "daily basis" - a level of severity not recounted anywhere else in the record); Id. at 402 (reporting to Dr. Levenson - who performed an independent mental health evaluation - that she was not interested in seeking additional hours at her part-time job because she was "heading for disability.").

Whether the inconsistencies in claimant's various statements were the product of innocent mistakes or a deliberate effort to mislead, is not the issue — the point is that these inconsistencies provided substantial record support for the ALJ's credibility determination.

Based on the foregoing, the court cannot conclude that the ALJ's credibility assessment lacks substantial support in the record.

III. <u>Claimant's Residual Functional Capacity</u>.

As noted above, an individual's residual functional capacity represents a finding of the most a claimant can do despite his or her limitations. <u>See</u> 20 C.F.R. § 404.1545. Here, the ALJ adopted the opinion of the state agency reviewing physician, Dr.

MacEachran, who reviewed the record and opined that claimant could sustain work at the light exertional level.  Admin. Rec. at 19, 427-34).  The ALJ also gave "great weight" to the opinions of Dr. Levenson, who performed an Independent Psychological Evaluation of claimant.  Following her examination of claimant, Dr. Levenson opined that claimant has the ability to: (1) attend to basic activities of daily living; (2) interact and communicate with others appropriately; (3) maintain concentration adequately to perform typical work activities and her mental health issues "do not interfere with her ability to complete tasks;" and (4) "mental health factors do not currently interfere with this woman's ability to tolerate the stresses of her current employment."  Id. at 404-05.

The ALJ also relied upon claimant's demonstrated ability to work (albeit on a part-time basis), her ability to perform household chores, and her ability to provide babysitting services during the summer of 2011 (while also caring for her own infant child).  Id. at 16, 19.  See generally SSR 96-7p, 1996 WL 374186 at *5 (July 2, 1996) (it is appropriate for an ALJ to consider a claimant's "prior work record and efforts to work, [as well as] daily activities" in reviewing an application for benefits).  See also Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Ma. 2010)

("The hearing officer properly utilized [claimant's] testimony regarding her activities of daily living in assessing her credibility regarding the intense pain.  While a claimant's performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding.").

The ALJ also pointed to objective, physical examinations of claimant that were repeatedly normal.  Admin. Rec. at 18.  See also Id. at 493.  He also noted that claimant herself stated that she could lift up to 20 pounds - an ability consistent with work at the light exertional level.  And, finally, he noted the inconsistencies between claimant's admitted abilities and limitations ascribed to her by some of her treating medical professionals.  Compare Admin. Rec. 176 (claimant reported on her Social Security Function Report that she had no difficulty sitting) with id. at 488 (Dr. Corbett opined that claimant's ability to sit was significantly impaired - that is, limited to 10-15 minutes at a time without interruption).

In light of the foregoing, it is plain that ALJ's determination that claimant can perform at the light exertional level is supported by substantial evidence in the record.

IV.  <u>Claimant's Past Relevant Work</u>.

Finally, claimant points out that, at step four of the sequential analysis, the ALJ erred in concluding that she had past relevant work as a cashier.  In fact, she had not worked sufficient hours at her various jobs for any to qualify as substantial gainful activity.  The Commissioner concedes the error.  It was, however, harmless.

Although the ALJ erred at step four when he concluded claimant could return to her past relevant work as a cashier, he did not stop his analysis there.  Instead, he continued on to step five and concluded that, "In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can perform."  Admin. Rec. at 20.  In reaching that conclusion, he relied upon the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3, (also known as the "Grid").

15

Given that substantial evidence supports the ALJ's determination of claimant's medically determinable severe impairments and her RFC, his use of the Grid at step five was not improper.  And, his conclusion that claimant is capable of performing other work in the national economy is supported by substantial evidence.

## Conclusion

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that the there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled.  The ALJ adequately explained his decision to credit the opinions of some medical providers, while discounting others; he supportably concluded that claimant's testimony about the disabling nature of her impairments was somewhat overstated; he supportably concluded that she is capable of performing at the light exertional level; and, finally, his determination that claimant can perform jobs that exist in significant numbers in the national economy is supported by substantial evidence.

The question before this court is not whether it might find claimant to be disabled and entitled to benefits on the record

presented.  The scope of the court's inquiry (and its authority) is far more limited.  The question presented here is a narrow one: whether there is substantial evidence in the record to support the ALJ's decision.  In this case, there is.

That there is also substantial evidence in the record demonstrating that claimant suffers from several ailments and impairments, is not sufficient grounds upon which to reverse the ALJ's decision, which, as noted, is supported by substantial evidence as well.  When substantial evidence can be marshaled from the record to support either the claimant's position or the Commissioner's decision, this court is obligated to affirm the Commissioner's finding of no disability.  See, e.g., Tsarelka, 842 F.2d at 535 ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez, 647 F.2d at 222-23 ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one

17

rational interpretation."). <u>See also</u> <u>Gwathney v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997).

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 8) is necessarily denied, and the Commissioner's motion to affirm his decision (document no. 10) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 30, 2013

cc:  Elizabeth R. Jones, Esq.
     Robert J. Rabuck, AUSA

18